1. The evidence authorized the findings of the jury.
2. Where a plaintiff sued on an alleged express contract and the proof failed to show such a contract, it was not entitled to recover on a quantum meruit.
 DECIDED OCTOBER 14, 1949.
Dunlap Roofing Flooring Company sued Mrs. W. S. Boatwright for breach of a contract. The plaintiff's petition alleges that the defendant contracted with it to do certain roofing work on her house in Forsyth, Georgia; that it had completed such work as set out in the contract; that the defendant had paid the sum of $672.20 upon the contract price of $1160.00 leaving a balance unpaid and owing of $487.80. The plaintiff attached to the petition and incorporated therein by reference a copy of the "account." The defendant denied all the allegations of the *Page 156 
petition except as to her ownership of the house repaired. She further answered by alleging: that her son, John S. Boatwright, had contracted with the plaintiff; that such contract was made without her knowledge and consent; that she did not know of such work until it was nearly finished; that her son had made a substantial payment to the plaintiff for such work; that the "last bill" sent was charged to John S. Boatwright and not to her; that she had never been billed and never knew that she had an account with plaintiff until a few days before this suit; that John S. Boatwright was placed in involuntary bankruptcy before the filing of the suit and had listed the plaintiff's account in the bankruptcy schedules.
On the trial the defendant, on cross-examination, testified substantially as follows: that she owned the house that was covered; that in the summer of 1947 a man came by and stated he was going through town looking at roofs that needed fixing; that she asked what it would cost to fix her roof and he stated that he didn't know, that he would have to send someone to make an estimate; that she asked about how much it would cost and he answered $400 or $500; that she said "Don't send anybody"; that she got a letter in the fall that stated that the cost of repair would be $1100; that she thought such price ridiculous and put the letter aside and didn't answer it; that her son, John Boatwright, lived with her and took an interest in the house; that it was his home as well as her own; that he had had the house painted and didn't ask her about it; that he didn't consult her half the time when he did things for her that she could not do for herself; that he was not her agent; that he never did write any letters for her; that when the work on the house was started she was in Florida and when she returned the house was about half covered; that she did not ask John Boatwright who was covering the house or what they paid for it; that he stated he was having it done; that he didn't have title to the house; that he had been improving the house on his own since a small boy; that she and her son did not agree jointly to the work being done; that she did not want the work done; that she saw the work going on and that she didn't say anything to the workers and they didn't say anything to her; that she didn't object to the material going on the house, that it was perfectly all right *Page 157 
with her, and it wasn't costing her anything. The defendant further testified that no one came to see her except the man who "came around soliciting work"; that after he had quoted a price of $400 or $500 for the repair work she told him that she was not interested and not to send anyone else around; that she was not financially able to have the work done at that time and she told this to the solicitor; that she did not show the letter from the plaintiff quoting the price of $1100 to her son; that he could have picked it up but she didn't know; that she did not know he had contracted with plaintiff; that she thought the repair work had been paid for; that she never received a bill, statement or anything from the defendant; that her husband had been dead thirteen years and all her boys helped her; that she did not know whom John Boatwright referred to as "we" in his letter to the plaintiff authorizing the work to be done; that he could have been referring to her five children all of whom had helped her since the death of her husband; that John Boatwright was in bankruptcy and that the repair work had been completed prior to his bankruptcy. Mr. W. F. Dunlap testified: that he was president of the plaintiff company; that the plaintiff had had an employee, Mr. C. W. Gottwalls, who had charge of the work on the Boatwright house; that he was deceased; that the estimate of $1130 for the Boatwright work was made up by Gottwalls and that such estimate was mailed to the defendant; that as to whether a reply was received from Mrs. Boatwright, or someone for her, a letter was received from John Boatwright; that according to the plaintiff's books $487.80 was the balance owing on the Boatwright job; that Gottwalls was manager of the roofing department up to his death; that they would send out a man to estimate repair work if requested; that the plaintiff did not employ "floaters" or solicitors; that the plaintiff company had had few written contracts since 1912 and did not have regular contracts; that the plaintiff had done other work for Mr. Boatwright; that he was sure Mr. Gottwalls had called on him; that the plaintiff kept sending monthly statements to John Boatwright as agent; that they had not tried all the time to get the money from Mr. Boatwright; that he had made a substantial payment; that he didn't care where the balance came from; that they were trying to get the money from John Boatwright; *Page 158 
that they had not stopped trying to get the money from him; that he didn't think the plaintiff had filed a proof of claim in the bankruptcy court, did not think they were listed in the schedules for this account; that they did not sue John Boatwright because their contention was that they didn't trade with John Boatwright on this; that they took money from him; that there were other transactions with John Boatwright according to the company's receipts; that he never talked personally with Boatwright or the defendant in reference to finances; that the credit department kept in touch with people behind in accounts; that he didn't know whether John Boatwright owed them anything; that they tried to collect from him; that, as to whether he paid the company $710, that maybe they owed him some money, they might have to make a refund; that he was sure the attorneys representing them in Macon represented them at the hearing of the creditors when John Boatwright was present. Mr. Elbert Harris testified: that he was employed by the plaintiff as a roofer; that he had covered the Boatwright house for the plaintiff; that he didn't recall seeing the defendant while doing the job; that he had not heard of any complaint about the job; that he did not know Mrs. Boatwright at all; that it took ten or eleven days to finish the roofing and during that time he did not see the defendant at all; that he knew John Boatwright and that he didn't talk with him very much; that he covered John Boatwright's place of business; that Mr. Gottwalls was with him on one trip to Forsyth; that he never saw Gottwalls talk to either Mr. Boatwright or defendant. John Boatwright testified substantially as follows: that he lived in Forsyth with his mother in the house that was repaired; that he had lived there about twenty years and was the only member of the family that lived with her; that he made a contract with the plaintiff through Mr. Gottwalls to put the roof on the house; that as to whether Mr. Gottwalls came to see him about it, he was having the roof repaired on his place of business and he asked Gottwalls about the roof on the house; that Gottwalls made some estimate on the roofing job on the house and that it ran around $1100; that he told him he was going to pay for the work himself; that the plaintiff sent him bills for the work monthly; that he had paid the plaintiff $700 on the job; that the defendant did not know *Page 159 
anything at all about the contract with Gottwalls; that he has work done on the house; that he does those things voluntarily; that Mr. Dunlap had called him about the account several times; that each time they called they were asking for the balance due on that particular transaction; that the defendant was not present when the contract was made; that he believed she was in Florida at the time and that work was started before she returned; that he told Gottwalls he alone was responsible for the contract. The plaintiff introduced in evidence a letter from John Boatwright to the plaintiff which read "After considering every angle of the roofing problem, we have decided that you are best equipped to give us a first class job and would like to have the work completed as soon as possible. This is your authority to go ahead with the work according to your letter to my mother dated September 9th." John Boatwright further testified: that he had written the letter to the plaintiff telling them to go ahead with the job; that in the use of the word "we" he guessed he was referring to his firm; that his firm, when he had one, had an interest in his mother's house; that he didn't remember, when he referred to a letter that his mother got on September 9th, whether he was referring to that letter on September 9th addressed to his mother; that he didn't remember which letter to his mother he referred to in his letter to plaintiff; that as to whether he was referring to his mother when he said "We have decided," she didn't generally have anything to do with it; that he didn't make any payment for his mother, he made it for himself; that he was in bankruptcy and had listed this balance in the bankruptcy schedules; that he did not owe the plaintiff anything outside of this transaction; that he admits he owes plaintiff the sum sued for; that Mr. Gottwalls never mentioned anything about going to see the defendant; that Gottwalls wanted to contract with him; that he had had prior business transactions with Gottwalls and they had always been satisfactory, and that he always paid his bills promptly and guessed Gottwalls figured he would again. The jury found for the defendant. The plaintiff moved for a new trial upon the general grounds and the motion was denied. This ruling is assigned as error.
1. The part of the evidence set out above is sufficient to show that the jury was authorized to find from the evidence that there was no contract between the plaintiff and the defendant; that the defendant and John S. Boatwright did not jointly contract with the plaintiff; that John S. Boatwright was not acting as agent for the defendant in his dealings with the plaintiff; and that the defendant did not ratify the actions of John S. Boatwright.
2. The plaintiff contends that the jury should have found for it on a quantum meruit if it found that no contract, or agency, or ratification existed. This contention is not tenable. Where a plaintiff sues on an alleged express contract and the proof fails to show such a contract, he is not entitled to recover on a quantum meruit. Finley v. Coastal Chevrolet Corp., 64 Ga. App. 489
(13 S.E.2d 683). Whether the contention is without merit for other reasons need not be decided.
Judgment affirmed. Sutton, C. J., and Worrill, J., concur.